## ORENSTEIN & KOPPEL AKTIENGESELL-SCHAFT v. KOPPEL INDUSTRIAL CAR & EQUIPMENT CO.

### No. 4937.

Court of Appeals of District of Columbia.
Submitted Dec. 2, 1929.
Decided Feb. 4, 1930.

D. H. Stanley, of Washington, D. C., and Sidney Struble, and A. G. Hays, both of New York City, for appellant.

C. H. Butler, J. A. Kratz, and G. L. Munter, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This case is here on special appeal from an order of the Supreme Court of the District of Columbia denying a motion by appellant, defendant below, to vacate an attachment against property belonging to the defendant.

It appears that, prior to the opening of the war, April 6, 1917, defendant, a joint-

stock company organized under the laws of Germany, and having its principal place of business in this country, was transacting its business in the United States through various agencies. The business of defendant consisted principally in the manufacture and sale of industrial railway materials and equipment, and in the purchase and sale of merchandise on commission, including a large brokerage business. On June 15, 1918, the Alien Property Custodian seized the property of the defendant in the United States, and later sold the defendant's property to plaintiff company for $1,312,000. It is alleged that the property sold consisted of real and personal tangible and intangible rights, claims, titles, and interests, including the business of defendant's American branch as a going concern, together with the good will enjoyed by the defendant, including trade-names, trade-marks, symbols registered and unregistered, and patents.

It is alleged that following the war defendant, in violation of the terms of its contract, opened offices and agencies in plaintiff's territory, soliciting former customers to buy and sell merchandise of the kind previously dealt in by the American branch in competition with the plaintiff, using the names and symbols that had been transferred under the contract to the plaintiff. It is also alleged that defendant instituted vexatious and harassing suits and claims, not only in courts in this country, but in various foreign courts, and that it registered in territory where defendant carried on business the trade-marks, trade-names and symbols purchased by the plaintiff from the Alien Property Custodian. Plaintiff claims that by reason of these acts it has been damaged in the sum of $100,000, for which this suit was brought.

In aid of its suit plaintiff attached $150,000 of defendant's money in the possession of the Alien Property Custodian; and we are asked to review the action of the court below in refusing to dissolve this attachment.

Section 30 of Trading with the Enemy Act, as added by section 15 of the Settlement of War Claims Act of 1928, 45 Stat. 275 (50 USCA Appendix § 30), provides as follows: "Any money or other property returnable under subsection (b) or (n) of section 9 shall, at any time prior to such return, be subject to attachment in accordance with the provisions of the code of law for the District of Columbia, as amended, relating to attachments in suits at law and to attachments for the enforcement of judgments at law and decrees in equity, but any writ of attachment or garnishment issuing in any such suit, or

for the enforcement of any judgment or decree, shall be served only upon the Alien Property Custodian, who shall for the purposes of this section be considered as holding credits in favor of the person entitled to such return, to the extent of the value of the money or other property so returnable. Nothing in this section shall be construed as authorizing the taking of actual possession, by any officer of any court, of any money or other property held by the Alien Property Custodian or by the Treasurer of the United States."

Section 445 of the Code of the District of Columbia, among other things, provides: "In any action at law in the Supreme Court of the District of Columbia or the municipal court of said District, for the recovery of specific personal property, or a debt, or damages for the breach of a contract, express or implied, if the plaintiff, his agent or attorney, either at the commencement of the action or pending the same, shall file an affidavit showing the grounds of his claim and setting forth that the plaintiff has a just right to recover what is claimed in his declaration, * * * and where the action is to recover damages for the breach of a contract setting out, specifically and in detail, the breach complained of and the actual damage resulting therefrom, * * * the clerk shall issue a writ of attachment," etc.

The question here is one of jurisdiction of the court to issue the attachment in question, and it must be decided solely upon the sufficiency of the declaration, regardless of any defenses available to the defendant, since these are waived by its motion to dissolve the attachment. We think the averments of the declaration, if ultimately sustained, establish plaintiff's right to damages, if the Alien Property Custodian possessed the power to convey the property of defendant company in the manner alleged in the declaration, and thereby bind the defendant by the terms of the contract in an implied negative covenant not to engage in the future in business in the United States in violation of the terms of the conveyance.

We are not impressed with the contention that, if defendant did business wrongfully, in violation of its contract, it would be guilty of the commission of a tort rather than a breach of contract. This brings us to the question of the power of the Alien Property Custodian with reference to the custody and disposition of alien property, coming into his possession as the result of the war. He occupied the relation to the owners of the property of a common-law trustee, and as such

was vested with full power to act in compliance with the statutory authority vested in him by Congress. Under the provisions of section 30, supra, Congress was giving a remedy that did not before exist, by which contractual claimants might protect themselves against the funds in the custody of the Alien Property Custodian before the same should be removed from the jurisdiction of the courts of this country. The statute is remedial, and is entitled to liberal construction, and, when the action is based upon or growing out of a contract express or implied, whether made with the alien or with the Alien Property Custodian, acting as his trustee and in his behalf, the remedy provided by the statute is available.

In respect of the contract and the scope of its provisions as against defendant company, the Circuit Court of Appeals of the Second Circuit, in Koppel Industrial Car & Equipment Co. v. Orenstein & Koppel Aktiengesellschaft, 289 F. 446, 451, said: "We think this conveyed to the purchaser the exclusive right to carry on the business in the United States, with the right of protection of a court of equity from interference by the German corporation; for, if the present interference be permitted, what was conveyed would in time be destroyed. The sale was as complete as if it were a voluntary conveyance of its interests in the United States by the German corporation. It is not the case of a sale in invitum of the good will and business. Assuming a voluntary sale of its good will and business had been made by the German corporation, would it have been at liberty later to impair the good will by seeking the customers of the buyer and carrying on business, using substantially the same trade-name and trade symbol as they had theretofore used? We think not. * * * After the sale, in this instance, of the good will of the German corporation's business, it had no right to represent itself as carrying on that business which had been sold or to use its trade-marks or symbols or to represent itself as a continuer of that business in this country. The avenue of relief to it for what it lost, through the fortunes of war, is some future action by the Congress, and this is made clear by the statute. This is the only relief the German corporation can look forward to. It had no right to change its name, and then have its representatives solicit the business in this country, using such name and such means as before described in seeking the business."

■ The contention of counsel for defendant that the declaration is not sufficiently explicit to sustain the cause of action is not well founded. We are here considering the sufficiency of the declaration on a motion to dissolve the attachment. In view of the fact that the plaintiff is required, in order to secure the attachment, to give a bond in double the amount of his claim, the court would hesitate to place a technical construction upon the averments of the declaration, inasmuch as its terms may be enlarged or amplified in the future development of the issues in the case.

Speaking of the object of the attachment statute, this court, in Suter v. Lockwood Dental Co., 45 App. D. C. 92, 111, said: "We do not consider that the attachment statute is only meant to apply to those actions for damages for breach of contract which are precisely liquidated and ascertained. The object of the statute undoubtedly is to require such a statement of the damages suffered as will be informing to the defendant and enable him to prepare himself to meet the issue tendered."

It may be in future proceedings leading to a trial of the issues in this case that defendant will be entitled to a bill of particulars requiring the plaintiff to more specifically state the grounds upon which it is claimed that damage has been sustained, but these are matters with which we are not at this stage concerned, since, in our opinion, the declaration sufficiently states a case that will justify the issuing of an attachment as provided in the statute.

■ Counsel for defendant attack the provisions of section 30, supra, as unconstitutional and void. This contention can be disposed of briefly in view of the power vested in the government to seize alien property in time of war. That this is alien property is not contested. Disposing of a similar contention, Mr. Justice Holmes, in White v. Mechanics' Securities Corporation, 269 U. S. 283, 300, 46 S. Ct. 116, 118, 70 L. Ed. 275, said: "The funds were seized adversely by the United States in time of war. They are in its hands; it has declared by an Act of Congress what shall be done with them, and that is the end of the matter. There is no question that such a seizure and disposition are within its powers. * * * The United States seized the property in question from an enemy and of course could do with it what it liked."

This holding is supported in United States v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131; Swiss National Insurance Co. v. Miller, 267 U. S. 42, 45 S.

Ct. 213, 69 L. Ed. 504. The unlimited power of the government to provide for the disposition of alien property funds is also specifically ratified by the Treaty of Berlin, § 297, subsec. (d), and Annex to section 4, subsecs. 1 and 3.

The order is affirmed, with costs, and the cause is remanded for further proceedings.